# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| HERBERT DOUGLASS, |
|    Plaintiff, |
|      v. |
| DISTRICT OF COLUMBIA, |
|    Defendant. |

Civil Action No. 04–947 (CKK)

**MEMORANDUM OPINION**
(November 10, 2010)

Plaintiff Herbert Douglass ("Plaintiff") commenced this action against Defendant District of Columbia (the "District") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*,[1] Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and 42 U.S.C. § 1983 ("Section 1983"). Compl. ¶ 1, Docket No. [1]. By Memorandum Opinion and Order dated March 31, 2009 ("2009 Memorandum Opinion"), this Court granted the District's motion for judgment on the pleadings as to Plaintiff's IDEA and Section 1983 claims (Count I) and denied the District's motion as to Plaintiff's remaining Section 504 claim (Count II). *See Douglass v. District of Columbia*, 605 F. Supp. 2d 156, 159 (D.D.C. 2009). In its 2009 Memorandum Opinion, the Court also raised *sua sponte* the issue of whether it has subject matter jurisdiction over Plaintiff's Section 504 claim and ordered the

---

[1] The IDEA was reauthorized and recodified pursuant to the Individuals with Disabilities Education Improvement Act in 2004, Pub. L. No. 108-446, 118 Stat. 2647 (2004). The short title of the reauthorized and amended provisions remains the Individuals with Disabilities Education Act. *See* Pub. L. No 108-446, § 101; 118 Stat. at 2647; 20 U.S.C. § 1400 (2006). Accordingly, the Court refers to the amended Act herein as the IDEA.

parties to submit supplemental briefing on this issue. *See id.* After reviewing the parties' supplemental briefings, the Complaint, the relevant authorities, and the record as a whole, the Court concludes that it lacks subject matter jurisdiction over Plaintiff's Section 504 claim. Therefore, the Court shall DISMISS Plaintiff's Section 504 claim and, there being no further claims remaining in this action, shall DISMISS this case in its entirety.

## I. BACKGROUND [2]

The IDEA provides that all children with disabilities must be provided a free and appropriate public education ("FAPE"), and establishes procedural safeguards to ensure that each disabled child receives an individualized education program ("IEP") to fulfill this goal.

When the instant case was filed, Plaintiff was "a twenty-one year old learning disabled student." Compl. ¶ 8. For three years, Plaintiff was enrolled in special education classes pursuant to his IEP at Ballou Senior High School, a school within the District's public school system ("DCPS"). *Id.* ¶ 9. Plaintiff avers that, although his IEP specified that he was to be on the "high school diploma track," he was never informed by the District that "the special education classes he was attending were not eligible for Carnegie credits[3] and would not count towards his graduation credits." *Id.* ¶¶ 10-11. Accordingly, Plaintiff alleges that during his three years at Ballou Senior High School, he did not receive any Carnegie units that would enable him to receive a high school diploma. *Id.* ¶ 10. Plaintiff further alleges that his experience is not

---

[2] The Court shall assume familiarity with its 2009 Memorandum Opinion and shall provide here only a brief summary of the instant case as is necessary to resolve the issue currently under consideration. *See generally Douglass*, 605 F. Supp. 2d at 156.

[3] A "Carnegie" unit is a unit of credit for course work. *See Douglass*, 605 F. Supp. 2d at 159 n.3. Under the District's regulations, students must complete a certain number of "Carnegie" units in various subject areas to be eligible for graduation. *See id.*

unique, as "[s]tudents who take special education classes in most of the DCPS high schools cannot receive Carnegie units for those classes" and, "[c]onsequently, most special education high school students do not have the option of earning a high school diploma." *Id.* ¶ 7.

A due process hearing was held on June 6, 2002, during which "DCPS admitted that [it] could not offer [Plaintiff] Carnegie units at the high school level because he was enrolled in special education classes." *Id.* ¶ 12.[4] Review of the HOD indicates that the complaint Plaintiff and his parent brought against DCPS alleged that Plaintiff was denied a FAPE, in violation of the IDEA, "through [DCPS'] failure to provide him a full-time special education program and placement and classes in which he can earn Carnegie credits towards a diploma upon graduation." Hearing Officer Determination ("HOD") at 3, Docket No. [31-2]. For relief, Plaintiff requested: (1) an order directing DCPS to place and fund his attendance at Accotink Academy, a full-time special education school that awards Carnegie units, for the 2002-03 school year; (2) compensatory education in the form of a sixteen week summer program at Lindamood Bell Learning Center; and (3) reservation of the right to seek additional compensatory education if necessary. *Id.* In addressing the merits of Plaintiff's complaint, the HOD concluded that DCPS' mandate to provide Plaintiff a FAPE required it to: (1) inform Plaintiff's parent of the apparent conflict between Plaintiff's need for special education classes and his placement on a "diploma track" that required him to take non-special education classes that offered Carnegie units; and (2) obtain a waiver releasing DCPS from its responsibility to

---

[4] Although Plaintiff does not describe the relevant Hearing Officer Determination ("HOD") in his Complaint nor attach at copy of the HOD to the Complaint, Plaintiff subsequently submitted a copy of the relevant HOD to the Court in connection with his Motion for Summary Judgment. *See* Docket No. [31-2]. Review of the HOD demonstrates that the hearing was held on June 6, 2002; the decision was filed on June 21, 2002, and was issued thereafter on June 24, 2002. *See id.* at 2, 5.

provide Plaintiff a FAPE if Plaintiff's parent "persist[ed] on keeping her child on said 'diploma track.'" *Id.* at 4. Ultimately, the HOD concluded that DCPS failed to meet these requirements, and therefore awarded Plaintiff all of his requested relief. *See id.* at 3-5.[5] The HOD then informed Plaintiff that he had thirty days in which to appeal the decision. *Id.* at 5.

Over two years later, on June 9, 2004, Plaintiff filed the instant case. *See* Compl. Plaintiff's Complaint asserts a putative class action[6] and contains two counts. Count I alleges that the District's failure to offer Plaintiff special education classes that awarded Carnegie units denied him a FAPE. *Id.* ¶ 16. Count II alleges that the District discriminated against Plaintiff based solely on his disability by providing "only regular education students [with] the opportunity to earn Carnegie units and work towards a regular high school diploma." *Id.* ¶ 18. Through this action, Plaintiff seeks various forms of relief, including money damages and an order requiring the District to "credit Carnegie credits to all special education students who have completed high school classes." *Id.* ¶¶ 19-25.

The District filed its [5] Answer on August 19, 2004. Plaintiff subsequently filed a motion for summary judgment, *see* Docket No. [31], and the District responded with a motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), *see* Docket No. [32]. As parties are permitted to raise jurisdictional issues at any time, the Court held in abeyance Plaintiff's motion for summary judgment and ordered the parties to brief the jurisdictional issues raised in the District's motion to dismiss. *See* Min. Order (Apr. 11, 2006);

---

[5] In addition to Plaintiff's requested relief, the HOD also ordered DCPS to provide Plaintiff special education services during the summers of 2003 and 2004. HOD at 5.

[6] While Plaintiff's Complaint is styled as a class action, Plaintiff never sought class certification.

4

Min. Order (Aug. 24, 2006).

In its 2009 Memorandum Opinion, the Court construed the District's motion to dismiss as a motion for judgment on the pleadings because the District had already filed its Answer. *See Douglass*, 605 F. Supp. 2d at 161. The Court then granted the District's motion in regard to Count I because the Court lacked subject matter jurisdiction over Plaintiff's IDEA and Section 1983 claims, as Plaintiff failed to exhaust administrative remedies or the claims were time-barred. *See id.* at 170. As for Plaintiff's Section 504 claim (Count II), the Court denied the District's motion to dismiss for failure to state a claim, but raised *sua sponte* whether it had subject matter jurisdiction over this claim. *See id.* at 168-69. Accordingly, the Court ordered the parties to submit supplemental briefing as to "whether the Court lacks subject matter jurisdiction over Plaintiff's claim under the Rehabilitation Act because it is time-barred or, if not time-barred, because Plaintiff failed to administratively exhaust his remedies under the IDEA." *Id.* at 169. Plaintiff then filed his [44] Response to Court's March 31, 2009 Order ("Pl.'s Resp."), the District filed its [45] Response to Court's March 31, 2009 Order ("Def.'s Resp.") and Plaintiff filed his [46] Reply to Defendant's Response to Court's March 31, 2009 Order ("Pl.'s Reply"). The briefing on this issue is now complete, and the matter is therefore ripe for the Court's review and resolution.

## II. LEGAL STANDARD

A plaintiff bears the burden of establishing that a federal court has subject matter jurisdiction. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction . . . [and it] is to be presumed that a cause lies outside this limited jurisdiction."). Federal courts may raise the issue of their subject matter jurisdiction *sua sponte*.

*NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) ("'It is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue *sua sponte*.'") (quoting *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982)). "Indeed, [federal courts] must raise it, because while arguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice, [federal courts] are forbidden—as [] court[s] of limited jurisdiction—from acting beyond [their] authority, and 'no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Id.* (quoting *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003)).

### III. DISCUSSION

As previously mentioned, the Court's 2009 Memorandum Opinion ordered supplemental briefing as to whether the Court lacks subject matter jurisdiction over Plaintiff's Section 504 claim because (1) the claim is time-barred or (2) if not time-barred, because Plaintiff failed to exhaust his administrative remedies. *Douglass*, 605 F. Supp. 2d at 169. The Court shall address each of these issues in turn.

    *A.    To the Extent Plaintiff's Section 504 Claim is Based Upon the Allegations Raised Before the Hearing Officer, the Claim is Time-Barred*

The District argues that to the extent Plaintiff's Section 504 claim is based on the same allegations as Plaintiff's IDEA claim before the hearing officer, Plaintiff's Section 504 claim is time-barred as Plaintiff failed to timely appeal the HOD. Def.'s Resp. at 6-7. Plaintiff, in contrast, argues that his Section 504 claim is not time-barred because it asserts a systemic violation claim distinct from his claims before the hearing officer, which pertained only to his personal IEP and placement. *See* Pl.'s Reply at 3.

The Court, however, is not persuaded by Plaintiff's most recent characterization of his Section 504 claim. First, this characterization of Count II is, at best, dubious given Count II's repeated references to Plaintiff's individual circumstances, as opposed to systemic violations. *See* Compl. ¶ 18 ("Defendants have discriminated against *the plaintiff* solely based on *his* disability. The only reason *Herbert Douglass* did not receive Carnegie units for *his* high school classes while at Ballou Senior High School was because *he* was a special education student.") (emphasis added). Additionally, Plaintiff's characterization of Count II as a systemic violation claim was conspicuously absent from his opposition to the District's motion to dismiss Count II, wherein Plaintiff argued that the District's failure to implement his individual IEP formed the basis of his Section 504 claim. *See* Pl.'s [35] Opp'n to Def.'s Mot. to Dismiss at 8 ("DCPS's failure to fully implement Herbert's IEP, the same IEP they participated in developing, states a claim that the DCPS officials either acted in bad faith or used gross misjudgment. . . . DCPS discriminated against Herbert based solely on his disability by not having the appropriately qualified teachers in his classes."). Only now, faced with a jurisdictional challenge, has Plaintiff sought to pivot and recast his Section 504 claim as a systemic violation claim.

Interpreted consistently with Plaintiff's prior representations to this Court, Plaintiff's Section 504 claim is clearly time-barred because Plaintiff filed the instant case over two years after the HOD was issued.[7] Therefore, the Court lacks subject matter jurisdiction over Plaintiff's Section 504 claim. *See, e.g.*, *Carruthers v. Ludlow Taylor Elem. Sch.*, 432 F. Supp. 2d 75, 80 (D.D.C. 2006) ("[T]he limitations period is 'mandatory and jurisdictional: once the time

---

[7] When the HOD was issued, Plaintiff had thirty days to appeal. *See Douglass*, 605 F. Supp. 2d at 163-64.

prescribed by the rules is passed, [the court is] without the power to hear the case."). As such, Plaintiff's Section 504 claim fails on this ground alone.

> B. *The Court Also Lacks Subject Matter Jurisdiction Over Plaintiff's Section 504 Claim Because Plaintiff Failed to Exhaust Administrative Remedies*

Even crediting, *arguendo*, Plaintiff's most recent characterization of his Section 504 claim as a systemic violation claim, the Court would still lack subject matter jurisdiction, as Plaintiff failed to exhaust his administrative remedies as to such a claim.

"A court has no subject matter jurisdiction over an IDEA claim that has not first been pursued through administrative channels." *Massey v. District of Columbia*, 400 F. Supp. 2d 66, 70 (D.D.C. 2005). The IDEA explicitly extends its exhaustion requirement to any claims for relief that are available under the IDEA, regardless of the statutory basis for such claims:

> Nothing is this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, . . . title V of the Rehabilitation Act of 1973 . . . , or other Federal laws protecting the rights of children with disabilities, except that before filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures [for an impartial due process hearing and administrative appeal] shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*); *see also Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002) (The IDEA "provides that potential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act).").

Broadly speaking, the exhaustion doctrine furthers several important ends, including "prevent[ing] the parties from undermining the agency by deliberately flouting the administrative process." *Cox v. Jenkins*, 878 F.2d 414, 419 (D.C. Cir. 1999). In regards to the

IDEA in particular, the exhaustion doctrine advances two sound policies: (1) even if the agency below "cannot resolve the problem finally, the record made in the administrative proceeding will be extremely helpful to the court, since the administrative agency will likely have probed the issue with more expertise than a federal court could bring;" and (2) the administrative process affords "a means whereby official abuse can be corrected without resort to lengthy and costly trial." *Id.* (discussing these policies in the context of the IDEA's predecessor, the Education of the Handicapped Act ("EHA")) (internal quotation marks and citation omitted) (quoting *Riley v. Ambach*, 668 F.2d 635, 640 (2d Cir. 1981)).

In its 2009 Memorandum Opinion, the Court noted that 20 U.S.C. § 1415(*l*) appears to require Plaintiff to also satisfy the IDEA's exhaustion requirement in regard to his Section 504 claim. *See Douglass*, 605 F. Supp. 2d at 169. In his Response, Plaintiff does not quarrel with this assessment, arguing instead that his Section 504 claim falls within two exceptions to the IDEA's exhaustion requirement. *See* Pl.'s Resp. at 3-5.

As both parties recognize, litigants "may bypass the [IDEA's] administrative process where exhaustion would be futile or inadequate." *Honig v. Doe*, 484 U.S. 305, 326-27 (1988) (discussing exhaustion in the context of the EHA); *see also* Pl.'s Resp. at 2; Def.'s Resp. at 9. Under the IDEA in particular, a plaintiff's failure to exhaust his or her administrative remedies may be excused in three general circumstances:

(1) Resort to the administrative process would be "futile;"

(2) It is "improbable that adequate relief" could be obtained through administrative channels; or

(3) The agency has adopted a policy or pursued a practice of "general applicability" that is contrary to the law.

*DL v. District of Columbia*, 450 F. Supp. 2d 11, 17 (D.D.C. 2006) (quoting *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002)). In this Circuit, the exceptions for futility and inadequacy are narrowly construed, as the exhaustion requirement "may be waived only in the most exceptional circumstances." *Commc'ns Workers of Am. v. AT&T*, 40 F.3d 426, 432 (D.C. Cir. 1994) (quoting *Peter Kiewit Sons' Co. v. U.S. Army Corps. of Eng'rs*, 714 F.2d 163, 168-69 (D.C. Cir. 1983)). Additionally, Plaintiff bears the burden of proving such extraordinary circumstances. *See Honig*, 484 U.S. at 326-27; *Cox*, 878 F.2d at 419.

In this case, Plaintiff argues that his failure to exhaust administrative remedies should be excused for two reasons. First, Plaintiff argues that his Section 504 claim falls within a so-called "systemic violation exception" to the exhaustion requirement because his Section 504 claim asserts "a system-wide practice that is not isolated to one particular DCPS school." Pl.'s Resp. at 4. Second, Plaintiff argues that exhaustion would be futile because, as he has already graduated from school, the only adequate relief for his Section 504 claim would be compensatory damages—a remedy not available through the administrative process. *See id.* at 4-5. The District, unsurprisingly, refutes each of these contentions and argues that Plaintiff must exhaust his administrative remedies. *See* Def.'s Resp. at 7-14. The Court shall address each argument below.

        1.    <u>There Is No "Systemic Violation" Exception to the IDEA's Exhaustion Requirement</u>

As a threshold matter, contrary to Plaintiff's arguments, *see* Pl.'s Resp. at 2, the so-called "systemic violation exception" is not in fact a separate exception to the IDEA's exhaustion requirement. Rather, systemic violation claims are more appropriately analyzed under the exceptions for futility and inadequacy. *See, e.g.*, *DL*, 450 F. Supp. 2d at 17-19 (holding that

exhaustion of plaintiffs' claims of systemic IDEA violations would be futile and inadequate); *Massey*, 400 F. Supp. 2d at 73 (finding that "DCPS' repeated failure to follow unambiguous terms of law and to acknowledge and correct its mistakes" rendered exhaustion inadequate).

Admittedly, some case law originating from outside of this Circuit provides at least some support for Plaintiff's characterization of the so-called "systemic violation exception" as a separate exception to the exhaustion doctrine. *See, e.g.*, *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992).[8] However, neither party cites to any case law from this Circuit that would support the existence of such an exception. In fact, the various courts in this Circuit that have had the opportunity to address whether systemic violation claims may be excused from the IDEA's exhaustion requirement have done so under the recognized exceptions for futility or inadequacy—not a separate systemic violation exception. *See, e.g.*, *DL*, 450 F. Supp. 2d at 18-19; *Massey*, 400 F. Supp. 2d at 73. Consistent with this approach, the Court shall address Plaintiff's argument as a subspecies of futility and inadequacy.[9]

Distilled to its essence, Plaintiff's argument regarding the significance of his Section 504 claim purportedly asserting a systemic violation is as follows: "an administrative hearing officer

---

[8] The Court notes, however, that this characterization seems to overreach to some extent; the cases upon which Plaintiff relies appear to devolve into analyses under the futility exception—not a wholly independent systemic violation exception. *See, e.g.*, *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 113 (2d Cir. 2004) (explaining that the Second Circuit "had previously excused exhaustion of administrative remedies in cases that included allegations of systemic violations" because exhaustion "*would be futile*") (emphasis added); *Hoeft*, 967 F.2d at 1305 (explaining that systemic violations may be excused from exhaustion when they allege facial violations of the IDEA, such that "agency expertise and an administrative record are theoretically unnecessary in resolving the issue at hand"—*i.e.*, exhaustion would be futile).

[9] This clarification does not alter the ultimate result in this case because, even if the Court were to follow the courts that have recognized an independent "systemic violation exception," the Court would eventually analyze Plaintiff's argument under the futility exception. *See supra* p. 11 n.8.

does not have the power to correct this systemic violation of the law, and thus exhaustion of administrative remedies would be futile." Pl.'s Resp. at 4.[10] In other words, Plaintiff argues that "the only remedy to correct this systemic violation would be a system wide reform, which an administrative hearing officer does not have the authority to order." Pl.'s Reply at 5. The District counters that, *inter alia*, requiring Plaintiff to exhaust his remedies would advance the exhaustion doctrine's purposes and would not be futile or inadequate. Def.'s Resp. at 8-9. For the reasons set forth below, the Court agrees with the District and concludes that Plaintiff has failed to meet his burden of proving that exhaustion would be futile or inadequate.

First, based on the record created by the parties, the Court finds that the first purpose of the IDEA's exhaustion requirement—the creation of an administrative record helpful to a reviewing court's resolution of Plaintiff's Section 504 claim—would be furthered in this case by requiring Plaintiff to exhaust his administrative remedies. *See Cox*, 878 F.2d at 419 ("[T]he record made in the administrative proceeding will be extremely helpful to the court, since the administrative agency will likely have probed the issue with more expertise than a federal court could bring."). Significantly, unlike other allegations of systemic violations that courts have

---

[10] To the extent Plaintiff's argument could also be interpreted as claiming that, because Count II alleges a systemic violation, *ipso facto*, exhaustion is excused, *see* Pl.'s Resp. at 4, such an argument would be inconsistent with clear and unequivocal case law providing that the exhaustion requirement "may be waived only in the most exceptional circumstances," *Commc'ns Workers of Am.*, 40 F.3d at 432 (quoting *Peter Kiewit Sons'*, 714 F.2d at 168-69). Furthermore, even courts that arguably characterize the systemic violation exception as a separate exception to the exhaustion doctrine have concluded that the mere fact that a complaint asserts a systemic violation claim does not itself excuse a plaintiff's failure to exhaust. *See Hoeft*, 967 F.2d at 1304 (The systemic violation exception could not be met simply by "[s]tructuring a complaint as a challenge to policies, rather than as a challenge to an [IEP] formulated pursuant to these policies;" rather, plaintiffs must "demonstrate in addition that the underlying purposes of exhaustion would not be furthered by enforcing the requirement").

found to be excused from the IDEA's exhaustion requirement, it does not appear, and Plaintiff does not argue, that Count II asserts a facial violation of Section 504—*i.e.*, that Section 504 explicitly requires the District to award Carnegie units to those enrolled in special education classes. *See* Pl.'s Resp. at 3-4; Pl's Reply at 3-6; *DL*, 450 F. Supp. 2d at 18 (noting that plaintiffs alleged violations of the District's explicit statutory obligations to identify, locate, evaluate, and offer special education services to all disabled pre-school children). Instead, Plaintiff appears to be arguing that the District's policy of awarding Carnegie units for only non-special education classes constitutes discrimination based on disability, which in turn violates Section 504. *See* Pl.'s Reply at 5.[11] Absent a facial violation claim, the hearing officer's inquiry into the District's allegedly discriminatory policy would assist a reviewing court in determining whether this alleged practice in fact constitutes discrimination "solely" due to disability. 29 U.S.C. § 794(a).

Second, the Court agrees with the District that the second purpose of the IDEA's exhaustion requirement—"providing a means whereby official abuse can be corrected without resort to lengthy and costly trial"—would be furthered by requiring Plaintiff to exhaust his remedies. *Cox*, 878 F.2d at 419; *see also* Def.'s Resp. at 8-9. Notably, Plaintiff obtained all the relief he requested for those claims he actually raised before the hearing officer, *see* Docket No. [31-2], and he has provided no explanation as to why the District should not be provided a similar opportunity to correct its possible mistakes with respect to his Section 504 claim, *see generally* Pl.'s Resp.; Pl.'s Reply. Without a showing that the District would certainly refuse to correct Plaintiff's alleged violations, the Court finds that the second purpose of the IDEA's

---

[11] Section 504 provides, in pertinent part: "No otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

exhaustion requirement is also served by requiring Plaintiff to exhaust his remedies. *Cf. Massey*, 400 F. Supp. 2d at 74 (excusing plaintiffs' failure to exhaust because "the litany of DCPS failures reveals that it is apparently unable to follow statutory procedures in the first place" and "[w]orse yet, DCPS appears to be incompetent to address, in the manner required by the IDEA, a parent's complaints about those failures.").

Third, even if a hearing officer would hypothetically be unable to correct Plaintiff's alleged systemic violations, Plaintiff's Section 504 claim raises questions of educational policy "upon which the state experts should first have their say" and which "the record created by the application of their expertise to those problems will certainly help the federal court resolve the issue in a more informed manner." *Riley*, 668 F.2d at 640. As Plaintiff acknowledges, his proposed remedy to his alleged systemic violation—offering Carnegie units in special education classes—would require teachers of such classes to be dually certified. *See* Pl.'s Resp. at 4. The soundness of the District's alleged practice of not requiring dual certification and the appropriateness of Plaintiff's proposed remedy implicate matters of educational policy that would benefit from an administrative record, and the Court is not in a position to opine upon these matters in the first instance. *See Hendrick Hudson Cent. Sch. Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 208 (1982) ("[C]ourts lack the specialized knowledge and expertise necessary to resolve persistent and difficult questions of educational policy.") (internal quotation marks and citation omitted).

Finally, requiring Plaintiff to exhaust his administrative remedies will advance the exhaustion doctrine's overall purpose of "prevent[ing] the parties from undermining the agency by deliberately flouting the administrative process." *See Cox*, 878 F.2d at 419. As previously mentioned, Plaintiff argues that his Section 504 claim is distinct from his claims before the

hearing officer. *See* Pl.'s Reply at 3. This distinction, however, is at best nothing more than semantics, and at worst a thinly veiled attempt to evade the ramifications of Plaintiff's failure to timely appeal the HOD. Of course, every IDEA and related Section 504 claim can be reformulated as a broader challenge to a policy, instead of a challenge to a plaintiff's own IEP or placement. However, lest the IDEA's exhaustion requirement be rendered a nullity, a self-serving (and, in this case, belated) reformulation alone cannot excuse a plaintiff's failure to exhaust. *See Hoeft*, 967 F.2d at 1304 ("Structuring a complaint as a challenge to policies, rather than as a challenge to an [IEP] formulated pursuant to these policies . . . does not suffice to establish entitlement to a waiver of the IDEA's exhaustion requirement.").

For the aforementioned reasons, the Court concludes that Plaintiff has failed to carry his burden of proving that exhausting his Section 504 claim should be excused due to Count II purportedly alleging a systemic violation of Section 504. The law requires Plaintiff to establish "exceptional circumstances," and Plaintiff has fallen woefully short of satisfying his burden here.

>	2.	Plaintiff's Claim for Compensatory Damages Does Not Render the
>		IDEA's Exhaustion Requirement Inadequate

Plaintiff also claims that exhaustion of his Section 504 claim should be excused because the remedies that the hearing officer is empowered to order under the IDEA would be inadequate. Pl.'s Resp. at 4-5. Plaintiff relies on *Covington v. Knox County School System*, 205 F.3d 913 (6th Cir. 2000), to argue that because he has already graduated from school, only compensatory damages, which a hearing officer cannot order, may remedy his alleged violations. Pl.'s Resp. at 4-5. In response, the District argues that "the majority of courts" confronted with this issue have held that a plaintiff seeking compensatory damages must exhaust under the IDEA, even if such damages are not available in the administrative process. Def.'s Resp. at 13.

Plaintiff raised this identical argument in his opposition to the District's motion to dismiss. Pl.'s [35] Opp'n to Def.'s Mot. to Dismiss at 11 (arguing that exhaustion is not required for Plaintiff's Section 1983 claim for IDEA violations (Count I) because "it is not within the purview of the Hearing Officer to award damages" and "normal remedies under the IDEA, specifically compensatory education, are inadequate to compensate [Plaintiff] for the harm he has suffered . . . because he is out of school.") (internal quotation marks and citation omitted). In its 2009 Memorandum Opinion, the Court rejected this argument and held that "Plaintiff . . . may [not] skirt the administrative remedies provided for in the IDEA simply by adding a claim for monetary relief," because otherwise

> every plaintiff who had failed to exhaust his or her administrative remedies could simply side-step the error by adding a claim for monetary damages to his or her complaint in federal court. Such a result is illogical and in direct contradiction to the purpose of the IDEA's exhaustion requirement.

*Douglass*, 605 F. Supp. 2d at 167. Under the law-of-the-case doctrine, the Court's prior decision regarding whether a claim for compensatory damages allows Plaintiff to circumvent the IDEA's exhaustion requirement is binding here. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) ("[T]he *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*."). As Plaintiff does not dispute that his Section 504 claim is subject to the IDEA's exhaustion requirement, *see* Pl.'s Resp. at 2-3, the Court shall not revisit its previous holding that Plaintiff is not excused from the IDEA's exhaustion requirement because he seeks compensatory damages.

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that it lacks subject matter jurisdiction over Plaintiff's Section 504 claim, regardless of whether the claim is in fact distinct

from the claims Plaintiff raised before the hearing officer. Accordingly, the Court shall DISMISS Count II and, there being on further claims in this action, DISMISS this case in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Date: November 10, 2010.

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge